Daniel, J.
In the description of many of the offenses at the common law certain technical expressions are required to be used; as in indictments for *790 murder, burglary, mayhem, and other felonies which it is not necessary to enumerate. In such cases no other words, howsoever descriptive of the offense, will be allowed to stand in the indictment as the substitutes for the precise language to which usage and precedent have attached the peculiar and exclusive office of describing the offense. The like nicety and particularity is also required in indictments for offenses under various statutes; and the precedents are numerous in which very slight departures from the terms in which the offenses are described in such statutes, have been held to vitiate the indictments. In the case of United States v. Gooding, 12 Wheat. R. 460, however,- Judge Story, in delivering the opinion of the Supreme court, says, that such instances have not resulted in the establishment of any general rule; but that on the contrary, the course has been to leave every class of cases to be decided very much upon its own peculiar circumstances. And in United States v. Bachelder, 2 Gallis. R. 15, the court say that there is no general rule which requires more than that the offense be set forth with substantial accuracy and certainty to a reasonable intendment.
We have also the authority of the case of The King v. Stevens, 5 East’s R. 244, for holding, that, whilst every indictment or information ought to contain a complete description of such facts and circumstances as constitute the offense, there is no rule, except in particular cases, where precise technical expressions are required to be used, which compels the courts, in construing the language of indictments, to reject the aid of such references to the context and the relation and dependence of the words, as are properly resorted to and found useful in ascertaining the true 'aim and meaning of other pleadings; and that, where a word, used in an indictment, is capable of different meanings, if it is sufficiently marked by the context or *791 other means in what sense the party framing the charge intended to use it, it does not clash with the rules of construction applied to criminal proceedings, to construe it in that sense.
A proper application of these views to the case before use will, I think, result in showing the correctness of the judgment of the Corporation court, and the consequent error in that of the Circuit court.
The brief charge in the indictment is, that the defendant “unlawfully did sell music not manufactured by the seller within this state, without having a license therefor according to law.”
There is no law which forbids the sale of music in terms. But by the 30th section of the act of 1852-3, concerning the assessment and collection of the public revenue, it is declared that no person shall, without obtaining a license as a merchant, sell at any store or place in this state any goods, wares, merchandise or other articles, except such as may have been manufactured by the seller in this state, or been produced or raised by him, &c.: And it is under this law that the indictment has been preferred, and the verdict and judgment had against the defendant.
In this state of things, the enquiries, which would seem to present themselves, are: Is “ music” in any well established sense, embraced.by the words “goods, wares or merchandise.” And if so, does it appear with certainty that the indictment speaks of it in that sense? If so then the indictment in effect charges the sale of goods, wares or merchandise, and specifies the particular class or kind in the sale of which the statute has been violated. That there is such an acceptation of the word, is a matter of public knowledge and general information. The word is used in that sense in the daily advertisements, and the kind of merchandise it imports is to be found exhibited for sale in the store of nearly every bookseller or stationer *792 in the country. It is said, however, that the word is ambiguous; that it has several other meanings; and that without an averment in the indictment of its being goods, wares or merchandise, the sense in which the word was used is not fixed with certainty; that one learned in the science, or skilled in the arts of a musician may impart instructions therein, or make exhibition of his skill, or grant the license to perform his musical works or compositions, for a price, and that in each of these senses he may be said to “ sell music;” and that for none of these acts could he be held amenable as for a violation of the statute; and that, consequently, though the defendant were to admit the truth of every allegation in the indictment, (as he does in the motion to arrest the judgment,) he would not as a legal necessity admit that he had done an illegal act.
The obvious answer to this- argument of the defendant’s counsel is, that in none of the instances supposed by him, is there a sale in the sense in which that word is most usually received; which is, to indicate the exchange of some material article of property for money; and that the words in the indictment, “ not manufactured by the seller within the state,” do not admit of any other than the most awkward connection with the word “music” in any of the senses in which the counsel supposes it legally possible it may have been used; whilst they are very proper to be used in reference to “ goods, wares and merchandise.”
It is true that the phrase, “ not manufactured by the seller within this state,” is not used in the indictment for the purpose of explaining the preceding portion of the charge. Its special office is that of setting forth a further distinct element of the offense. If, however, from its nature and position, it necessarily reflects on an ambiguous word, the sense in which the *793 latter must have been used, I know of no rule which constrains us to reject the explanation, and to refuse to accept the word in the sense which will give force and validity to the indictment.
If the acceptation of the word “ music,” as importing a kind or class of goods, wares and merchandise, were not a matter of common understanding, it might have been necessary to aver in the indictment that it was goods, wares and merchandise, or to have given some such description of its properties as would necessarily show that to be the-fact. But as such an application of the word is well understood, the law does not recognize the necessity of such averment or description, either to certify the court that the indictment contains a criminal charge, or to notify the defendant of its precise nature. The necessity of such an averment is not only disowned by the general principles to be deduced from the cases already cited, but is expressly denied by a decision of the Supreme court of Mississippi in a case very similar in its features to the one under consideration. I refer to the case of The State of Mississippi v. Borroum, 23 Miss. R. 477, in which the indictment was for buying from a slave “ seventy-five pounds of cotton,” under an act making it a misdemeanor to buy from a slave without the permission of his master, &e. any corn, fodder, hay, meal, &c. or “ other produce or commodity.” Cotton is not one of the commodities enumerated in the statute, and the indictment did not contain any averment that cotton was “ a product or commodity.” Yet the indictment was held sufficient.
The obvious reasons on which that decision was founded, apply with equal force here. The court is presumed to know the sense or senses in which a word is ordinarily used, and is not bound, when met by an ambiguous word in an indictment, to reject that meaning which is made obvious by the context, and to con *794 tend for some other use of the word that every man of ordinary information in the community, untrammeled by rules of construction, would discard as absurd. Neither the court or the defendant could have misunderstood the sense in which the word in question was intended to be used in the indictment.
Under these circumstances, to declare the indictment insufficient would be to revive an unreasonable strictness, and to pay to mere form the scrupulous deference that is shown in some of the early decisions, and is still observed in certain classes of cases before mentioned, but which the courts in modern times have on various occasions properly shown a determination to extend to no case or class of cases in which such observance is not exacted by the strictest analogy.
I think that the judgment of the Circuit court ought to be reversed, and that of the Corporation court affirmed.
The other judges concurred.

The judgment of the Circuit court reversed, and that of the Corporation court affirmed.